January 22, 2025

Clerk of the United States District Court
Southern District of Florida
701 Clematis Street, Room 402
West Palm Beach, Florida 33401

CLG
Provided to South Bay Corr and Rehab. Facility
on __1·22·26__ for mailing.

Charles Glover # T08861
SBCRF  600 U.S. Hwy 27 S.
South Bay, Fla. 33493

RE:   **Southern District NEW FILING FOR 1983 COMPLAINT**

Honorable Clerk or Deputy:

    Greetings. My name is Charles Glover and I am a pro-se Plaintiff in a Section 42 U.S.C. 1983 Civil Rights Complaint. I am filing the following Court approved Forms for my initial filing to your office:

1. 3 copy of Civil Rights Complaint under 42 U.S.C. Section 1983;
2. 2 Copies of summons for each Defendant

    Please provide me with the invoice for the filing and the issuance of each summons. I thank you for your time and service in this matter.

                                  Charles Glover, pro-se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case Number: _____

Charles Lee Glover
(Write the full name of the plaintiff)

vs.

THE GEO Group, INC AND Hippolito Matos,
4955 Technology

FILED BY ___AS___ D.C.

JAN 27 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

(Write the full name of the defendant/s in this case)

# COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

**I. Party Information**

A. Plaintiff: Charles Lee Glover

Address: 600 U.S. Highway 27 south

Inmate/Prison No.: T08861

Year of Birth: 1968  (Do not include day or month, pursuant to Fed. R. Civ. P 5.2)

(Write your name, address and prison/inmate number, if applicable)

vs.

B. Defendant: Charles Glover   Defendant: Hippolito Matos

Official Position: individual   Official Position: Corporate rep.

Place of Employment: Geo   Place of Employment: N/A

(Write the full name of each defendant, official position and place of employment. Attach a separate page if you need additional space for additional defendants.)

## II. Statement of Claim

Briefly describe the facts of your case. Describe how each defendant is involved, names of other persons involved, and dates and places. Each claim should be stated in a separately numbered paragraph. Please use short and plain statements, with separately numbered paragraphs indicating why the relief requested should be granted. Do not include legal arguments or cite cases or statutes.

Attach additional pages, if necessary.

Please See attach Complaint

## III. Relief Requested

Briefly state what you are requesting from the Court (what do you want the Court to do). Do not include legal arguments or cite cases or statutes. Attach additional pages, if necessary.

Please See attach Complaint

## IV. Jury Demand

Are you demanding a jury trial? ✓ Yes ___ No

Signed this __21__ day of __January__, 20__26__

_____
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is truce and correct.

Executed on: _____

_____
Signature of Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CHARLES GLOVER,
    Plaintiff,

v.                                                                                  Case No.: _____

DR. HIPOLITO MATOS, in his official capacity,
and individually, And THE GEO GROUP, INC.,
    Defendants,
_____/

## COMPLAINT

COMES NOW, Charles Glover, pro se, (the "Plaintiff") and sues the defendants, Geo Group, Inc., a corporate entity ("Geo") acting under the Florida Department of Corrections and Dr. Hipolito Matos ("Dr. Matos"), individually, and in his official capacity as the medical director for Geo, and alleges as follows:

### PARTIES, JURISDICTION, VENUE

1. This is an action for damages in excess of 100,000.00 exclusive of costs.

2. The Defendant, GEO, is a for-profit global corporation which operates numerous prison facilities in the State of Florida, the United States, and in foreign countries. Specifically, GEO operates the prison facility in West Palm Beach County, Florida, known as South Bay Correctional and Rehabilitation Facility ("SBCRF"). Geo operates under the color of State law by providing incarceration services and prisoner housing which is normally the province of the State of Florida. Geo maintains offices in Boca Raton, Florida.

3. Dr. Matos, also known as the medical director for SBCRF, at all times relevant, was the Geo employee with policy making practices relating to the provision of medical care at SBCRF, the training for the operation of the medical facility at SBCRF, such as the

1

training of nurses and other medical workers at the medical department. In his official capacity, Dr. Matos' actions and inactions are those of Geo. Individually, Matos' actions are within the scope of his employment and under the color of state law.

4. The Plaintiff is an individual who at all times relevant to the violation of his constitutional rights was a confined inmate at SBCRF and subject to, and under the care and custody of Geo and the Florida Department of Corrections in West Palm Beach County. The Plaintiff is now confined to suffering chronic pain on a permanent basis as a result of the violation of his rights and the effect of deliberate indifference/omissions alleged herein.

5. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343; and 42 U.S.C. §1983.

6. Venue is proper in this Court as the causes of action complained of herein occurred in West Palm Beach County, Florida, which is in the Southern District of Florida, West Palm Beach Division. Venue is also proper in this Court because the Defendants all reside/are based in the United States Southern District Court's geographical area.

## FACTUAL BACKGROUND

### Dr. Matos' Duties and Responsibilities Relevant to this Action

7. As noted, at all times relevant, Dr. Matos was the general medical director of SBCRF, and is bestowed with the following relevant duties and obligations, including, without limitation, authority through Geo to: have general responsibility for the health care and treatment protocols for inmates at SBCRF; see that all subordinates do their duty in performing the same; maintain control over the entire SBCRF medical department for implementation and execution of all applicable Florida Administrative Code, and the

inherent policy procedures; to develop, implement, and monitor compliance with appropriate policies and procedures designed to make sure that health-distressed inmates at SBCRF have their ailment conditions diagnosed and identified and, as necessary, provide those inmates with referrals to outside medical specialists; to ensure proper training of staff to appreciate emergency or debilitating medical protocols; and to exercise and discharge all powers and functions as pertain to his office and to perform such other duties as may be required of him by Code or ordinance, including the operation of the medical facility at SBCRF.

8. In accordance with the foregoing duties, Dr. Matos is authorized and empowered to appoint deputy directors, deputy health care providers and secretaries, clerks, operators, janitors, turnkeys, desk nurses, desk sergeants, women officers and such other help as may be needed to efficiently secure the medical facilities and to efficiently conduct the medical services therein.

**The Plaintiff Suffers a Debilitating Right Bicep Tear**

9. Prior to his transfer to SBCRF in August of 2019, the Plaintiff, a veteran of the United State Armed Forces, had been diagnosed with Post-Traumatic Stress Disorder ("PTSD"). In September of 2023, while incarcerated at SBCRF, the Plaintiff underwent an extreme PTSD episode/nightmare while asleep and as a result of reflexive uncontrolled bodily movement, was thrown off his bunk and fell on his extended right arm.

10. The Plaintiff was immediately taken to the SBCRF medical facility for evaluation and treatment. At that time, the SBCRF medical staff performed a routine and perfunctory treatment and provided the Plaintiff with low-dosage pain medication and sent him back to his cell with the promise that he would be transported to an outside specialist in the near future for a full diagnosis and treatment.

3

11. However, it was not until December 6, 2023, nearly 3 months after the injury incident that the Plaintiff was finally transported to the Orthopedic Center of Okeechobee, P.A., to be evaluated by Dr. Bradford Slutsky, an Orthopedic specialist.

12. During the December 6, 2023 evaluation, Dr. Slutsky diagnosed the injury as a nearly three month old rupture of the right distal bicep.

13. Dr. Slusky further opined that the bicep muscle has been retracted and that there would be potential risk with re-attachment procedure to the flexion contracture of the elbow.

14. Accordingly, Dr. Slutsky recommended that the Plaintiff be seen by an upper extremity specialist so that he could explore the risks and benefits associated with surgical intervention on his right bicep. Dr. Slutsky emphasized that the referral to a second specialist should be "done sooner rather than later since it has *already been almost three months.*"

15. A copy of Dr. Slutsky's report was transmitted to SBCRF medical in general, and to Dr. Matos in particular. Accordingly, Dr. Matos was aware of the findings articulated by Dr. Slutsky at the Orthopedic Center of Okeechobee, P.A.

**The Plaintiff's Condition is Exacerbated Due to Deliberate Indifference at SBCRF**

16. After returning to SBCRF, the Plaintiff immediately proceeded with attempting to secure an appointment with the medical department at SBCRF in order to: (a) continue the diagnosis and evaluation of his bicep injury; (b) obtain remedial pain control medication; and (c) procure a consult with an upper extremity specialist as recommended by Dr. Slutsky.

17. However, it was only after numerous sick call requests and medical resolution form submissions that the Plaintiff was finally seen by the medical personnel at SBCRF on April 9, 2024.

18. More specifically, the Plaintiff was seen by Dr. Matos. At that appointment the Plaintiff reminded Dr. Matos of the need to consult with another specialist, and requested that an initial evaluation by the outside upper extremity specialist be scheduled immediately.

19. Further, the Plaintiff continued to seek treatment for his injury because the pain and discomfort had not resolved. Nevertheless, the Plaintiff was merely provided with sporadic doses of Ibuprofen to alleviate the pain. And that only after persistent requests.

20. The Plaintiff also kept requesting an update on his required specialist consult. Finally, at a scheduled appointment on May 31, 2024, with Dr. Matos, the Plaintiff was told that the SBCRF medical staff was still looking for a specialist to send him to. This despite the fact that SBCRF is within a 2-3 hour radius of major population centers such as Ft. Lauderdale, and Miami.

21. Meanwhile, the Plaintiff persisted with suffering the pain and aggravation of his injury.

**Widespread Abuse and Indifference**

22. As an inmate, the Plaintiff is subject to the custody and control of the Geo operated prison facility and does not have any freedom of movement for the more and necessarily aggressive consult or treatment required for his Bicep. Thus, the Plaintiff continues to suffer degeneration of his right tear of the distal bicep muscle as a result of the delay and obfuscation of the needed consult and treatment by the staff at SBCRF, including, in particular, the refusal/failure of Dr. Matos to prescribe a consult visit to an upper extremity specialist for proper evaluation of the Plaintiff's injury.

23. The failures and omissions of proper process adherence by Dr. Matos, and therefore, by Geo, are indicative of a systematic and organizational efficiency debacle, particularly, by the medical department at SBCRF.

24. This debacle results in failure to schedule inmates for proper care.

25. Supervisors along with Defendant Matos in his respective position, ensured Nurses and medical staff went undisciplined and were encouraged to deliberately ignore the Plaintiff and other inmates' serious medical needs. Defendant Matos, and other supervisors who were in their medical administrative positions at all relevant times, routinely approved incidents of deliberate indifference to serious medical needs, failed to report incidents of deliberate indifference to serious medical needs, and refused to take disciplinary action against nurses or other medical staff who perpetuated the pattern of deliberate indifference to serious medical needs of the Plaintiff and other inmates at SBCRF. Defendant Matos and other medical supervisors were aware of the deliberate indifference to Plaintiff's serious medical needs but failed to take action to change this practice, and failed to remedy the problems associated therewith. Between 2022 and 2024 there have been no less than 20 incidents of deliberate indifference to inmates' serious medical needs resulting in additional injuries and damages to inmates at SBCRF. This is a sufficiently numerous incidents of deliberate indifference to constitute "obvious, flagrant, and rampant" abuse, especially when those incidents were brought to the attention of the supervisory officials throughout Geo in question.

26. Throughout the Plaintiff's lengthy ordeal for attempting to obtain treatment from the prison medical administration, the Plaintiff memorialized the lack of diligence on the part of the SBCRF administration, and consequently submitted: (a) informal grievance, followed by (b) formal grievance to the Warden at SBCRF, and finally, (c) by a formal grievance addressed to the administrative unit overseeing grievance appeals at the Florida Department of Corrections ("DOC") in Tallahassee, Florida.

27. There was no response from the responsible authorities at either SBCRF or the DOC to the submitted grievances, and therefore, the grievances are deemed denied.

28. In those grievances, the Plaintiff advised the relevant officials of his condition and needs and requested a quality outside consultation with an appropriate orthopedic specialist in particular, and reasonable prudent support for his bicep injury in general.

29. Thus, the Plaintiff satisfied the exhaustion of administrative remedies prior to bringing this action for damages against the SBCRF detention facility.

30. Furthermore, the Plaintiff avers that all conditions precedent to the bringing of this action have occurred or have been preformed.

### COUNT I ----42 U.S.C. § 1983----Eighth Amendment Violation
### Deliberate Indifference to Serious Medical Need
### (Plaintiff v. Dr. Matos, individually)

31. The Plaintiff hereby incorporates and re-alleges paragraphs 1-30 as though fully pleaded herein.

32. The conduct by Dr. Matos and the personnel at SBCRF identified and described in the preceding factual paragraphs constituted deliberate indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

33. The conduct by Dr. Matos identified and described in the preceding factual paragraphs constituted deliberate indifference to serious medical needs as defined by clearly established law.

34. At all relevant times, Dr. Matos was acting under color of state law, as agent of Geo, and within the scope of his employment and authority.

35. At all relevant times in which Dr. Matos interacted with him, the Plaintiff was suffering from injuries to his Bicep which were so obvious that even a layperson would have easily recognized the necessity for medical attention.

36. Every reasonable and properly trained medical personnel would have known that the Plaintiff objectively required medical attention after observing the following physical conditions: (a) He was unable to extend or put pressure on the right side arm and shoulder of his body; (b) He was unable to hold himself up in an erect standing position against the wall; (c) He was unable to lift, pull, or push any weight over 5 pounds utilizing his right arm for more than a few minutes at a time; (d) He was beset by chronic right arm pain and discomfort even during periods of rest or laying down; (e) He complained of severe numbness to his right bicep side and; (g) He complained of the onset and perseverance of extreme episode of right bicep soreness.

37. Even a layperson, let alone a trained medical provider or responder, would have known that Plaintiff was suffering from serious medical needs related to his upper right extremity and necessitated medical treatment, and as stated by Dr. Slutsky, a second specialist consultation.

38. GEO medical staff and Dr. Matos in particular, deliberately failed to transport the Plaintiff to receive the required consult and medical care by an orthopedic specialist doctor for over a year from the reporting of the symptoms described above while he was under SBCRF control and custody. Any reasonable medical staff personnel or emergency responder would have known that it was deliberately indifferent to fail to provide medical treatment in the face of such easily recognizable and serious medical conditions as those exhibited in the Plaintiff's right bicep.

39. SBCRF medical personnel were deliberately indifferent in denying the Plaintiff appropriate medical care that was obviously necessary. As trained personnel working at SBCRF Dr. Matos and his medical staff were required to transport patients with medical needs to outside medical providers to be treated by competent specialists or physicians.

40. However, SBCRF has a pattern and practice of failing to provide inmates with necessary outside medical intervention in order to save costs. This is done with the full knowledge of Geo and the Florida Department of Corrections. It is obvious that here, in the Plaintiff's case, financial cost considerations played an important role in Dr. Matos' disregard of the Plaintiff's serious medical condition, and more importantly, disregard of the Plaintiff's constitutional rights under the Eighth Amendment.

41. As a direct and proximate result of the deliberate indifference to serious medical needs, the Plaintiff experienced catastrophic personal injuries and catastrophic conscious pain, suffering, and distress.

42. As a direct and proximate result of the deliberate indifference to serious medical needs, the Plaintiff eventually suffered permanent right bicep damage, which at best could only be mitigated by surgical intervention. Moreover, subsequent to this injury, the Plaintiff suffered, and continues to suffer, and is in danger of losing use of his right arm in the near future, and could become certified as "disabled."

43. As a direct and proximate result of the deliberate indifference to serious medical needs, the Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

44. Punitive damages are available against Dr. Matos as a matter of federal common law and are hereby sought by the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendant Dr. Matos for:

a) Provable damages;

b) Punitive damages as allowed by law;

c) Costs of this action

d) Such and other further relief as this Court deems proper.

### COUNT II---42 U.S.C. § 1983—Failure to Train
### Plaintiff v. Dr. Matos, in his official capacity (Geo)

45. The Plaintiff hereby incorporates and re-alleges paragraphs 1-44 as though fully pleaded herein.

46. Dr. Matos, as the chief medical director for Geo at SBCRF is the official with procedure implementation authority for SBCRF regarding inmate diagnosis, treatment, and outside referral practices, and staff training as to those areas in general, and training for the operation of the medical facility at SBCRF in particular.

47. In his official capacity, Dr. Matos' actions and inactions are those of Geo.

48. Specifically, Dr. Matos, on behalf of Geo, had a duty to train, or cause to be trained, members of the medical staff handling the running and operation of the SBCRF medical department, that is, of the personnel meant to handle inmate treatment and care, and on the predictable and foreseeable situations they would encounter that would implicate the Constitutional rights of individuals held in custody at SBCRF.

49. Geo, through Dr. Matos, had a duty to train members of the SBCRF medical unit meant to handle diagnosis and treatment of prison inmates such as the Plaintiff beyond the ordinary medical training given the inherent specialized nature of certain inmate injuries.

50. Geo and Dr. Matos were aware that they had placed inexperienced medical personnel at the SBCRF medical facility. Further, Geo and Dr. Matos were aware that they did not have enough staff members to accommodate the medical needs of over 1,800 inmates at

SBCRF. Geo and Dr. Matos were also aware that they did not have enough experienced care givers at SBCRF medical to assist in the training of new personnel.

51. The inexperienced medical personnel at SBCRF had no business serving as first line medical personnel at SBCRF and were bound to violate the Eighth Amendment constitutional rights of inmates in their custody without proper training and guidance.

52. Geo had a widespread practice or custom of failing to train its medical personnel in the common, routine, and foreseeable tasks that they had to perform and, specifically, the constitutional limits of permissible conduct when responding as required, to any emergency health situations affecting the inmates at SBCRF and engagement with individuals suspected of having catastrophic health episodes while in custody, and the need to provide timely intervention, among other things.

53. Alternatively, even without a widespread practice, Geo and Dr. Matos failed to equip the medical personnel with the training to handle situations that were bound to occur during the course of their specific job responsibilities in regard to obvious serious medical conditions needed by the inmates.

54. The need for training the SBCRF medical personnel on their duties and constitutional bounds of their jobs was so obvious that Geo and Dr. Matos knew that if training was not provided then it was highly predictable and likely to result in the violation of SBCRF inmates' constitutional rights. Had Geo and Dr. Matos trained the medical staff in, without limitation, handling and responding to incarcerated inmates' emergency health episodes, recognizing immediate critical health incident, and performing necessary steps to timely take action, it would have prevented the violation of the Plaintiff's constitutional rights.

55. Geo and Dr. Matos' failure to train the medical personnel at SBCRF in the areas alleged above, was the moving force behind: (a) The unlawful and unconstitutional failure by them to effectively handle the emergency being experienced by the Plaintiff at the relevant times; and (b) the failure of SBCRF medical personnel to intervene timely and effectively in response to the Plaintiff's health emergency due to an attitude of deliberate indifference, caused harms inflicted against, and injuries suffered, by the Plaintiff.

56. The Plaintiff's injuries were a highly predictable consequence of Geo and Dr. Matos' failure to train their personnel, in, without limitation, the areas of handling and responding to incarcerated inmates' emergency health episodes, recognizing immediate critical health episodes, and taking necessary steps to timely take action.

57. The Plaintiff's injuries and ensuing distal bicep degeneration were a direct, foreseeable, and proximate result of Geo and Dr. Matos' failure to train their medical staff in, without limitation, the handling and responding to incarcerated inmates' emergency health episodes, recognizing immediate critical health episodes, and taking necessary steps to timely take action.

58. As a direct and proximate result of Geo and Dr. Matos' failure to train the medical staff at SBCRF in, without limitation, handling and responding to incarcerated inmates' emergency health episodes, recognizing immediate critical health episodes, and taking necessary steps to timely take action, the Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

59. As a direct and proximate result of Geo and Dr. Matos' failure to train the medical staff at SBCRF in, without limitation, handling and responding to incarcerated inmates'

emergency health episodes, recognizing immediate critical health episodes, and taking necessary steps to timely take action, the Plaintiff suffered catastrophic pain, suffering, emotional distress, anguish, personal injuries, neurological injuries, and loss of function.

60. As a direct and proximate result of the acts described in this Count, the Plaintiff suffered damages in an amount to be determined by a jury.

WHEREFORE, the Plaintiff requests judgment against Geo through the inaction, failure and omissions of Dr. Matos in his official capacity, for:

   a) Provable damages

   b) Cost of this action, and

   c) Such other and further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

/s/

Charles Glover, pro-se
South Bay Correctional
Rehabilitation Facility
600 U.S. Hwy 27 South
South Bay, Fl. 33493

Charles Lee Glover #TC8861 / E2.108L
South Bay Correctional Facility
600 U.S. Highway 27 South
South Bay, FLORIDA 33493

INSPECTED

Clerk of the United States Distr
Court
Southern District of Florida
701 Clematis Street Room
West Palm Beach, Florida
33401